UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| RAYMOND V. BURKART, JR., | * | CIVIL ACTION NO. 2:17-cv-12646 |
| Plaintiff | * | |
| | * | SECTION:  F(1) |
| versus | * | |
| PPG INDUSTRIES, INC., ET AL | * | JUDGE MARTIN L.C. FELDMAN |
| Defendants. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ANSWER, AFFIRMATIVE DEFENSES, CROSS-CLAIMS, AND THIRD PARTY DEMANDS OF HUNTINGTON INGALLS INCORPORATED

NOW INTO COURT, through undersigned counsel, comes Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) (hereinafter "Avondale"), who, for response to plaintiff's Petition, files the following Answer, Affirmative Defenses, Cross-Claims and Third-Party Demands:

### ANSWER

1.  The allegations contained in Paragraph 1, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

2.  The allegations contained in Paragraph 2, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein.  As they relate to Avondale, the allegations of Paragraph 2 of the Petition are denied as written.

Avondale admit only its corporate status. All other allegations are specifically denied as to Avondale.

3.     The allegations contained in Paragraph 3 through 9, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

4.     The allegations contained in Paragraph 10 are denied. To the extent that the allegations refer to a policy of insurance, which is written contract, such document is the best evidence of its content, including any coverage provided to any defendants for the alleged claims and damages at issue.

5.     The allegations contained in Paragraph 11 raise legal conclusions to which no response is required. To the extent a response is required, the allegations contained in Paragraph 11 are denied.

6.     The allegations contained in Paragraph 12, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

7.     The allegations contained in Paragraph 13 are denied.

8.     The allegations contained in the Paragraph 14 through, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

9.     The allegations contained in Paragraph 17 regarding the latency period of Plaintiff's alleged injuries are denied for lack of sufficient information to justify a belief therein. The remaining allegations contained in Paragraph 17, insofar as they relate to other

Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

10.     The allegations contained in Paragraphs 18 through 43, including all sub-parts therein, do not require a response from Avondale. However, to the extent a response is required, the allegations contained in Paragraphs 18 through 43, including all sub-parts therein, are denied for lack of sufficient information upon which to justify a belief therein.

11.     The allegations contained in Paragraphs 44 through 50, including all sub-parts therein, are denied.

12.     The allegations contained in Paragraph 51 are denied as written. As to Avondale, and to the extent that the allegations refer to a policy of insurance, which is a writing, such document would be the best evidence of its content, including any coverage provided to any defendants for the alleged claims and damages at issue.

13.     The allegations contained in Paragraph 52 are not directed to Avondale and therefore do not require a response.  To the extent that the allegations refer to a policy of insurance, which is written contract, such document is the best evidence of its content, including any coverage provided to any defendants for the alleged claims and damages at issue.

14.     The allegations contained in Paragraphs 53 through 56, including all subparts therein, insofar as they relate to other Defendants, are denied for lack of sufficient information upon which to justify a belief therein, and are specifically denied as to Avondale.

15.     The allegations contained in Paragraph 57 are denied for lack of sufficient information upon which to justify a belief therein.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

AND NOW, FURTHER ANSWERING, defendants herein affirmatively deny any and all allegations of fault or other basis of liability on the part of Avondale. Avondale herein specifically denies that it is guilty of wrongdoing with respect to the supervision of Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz during their alleged employment at Avondale or with regards to safety precautions taken on their behalf during that employment.

### SECOND DEFENSE

FURTHER ANSWERING, in the alternative, Avondale avers that the plaintiff is barred from prosecuting this action because of Raymond V. Burkart, Jr.'s knowledge of and assumption of the risks and the dangers associated with his employment at Avondale.

### THIRD DEFENSE

FURTHER ANSWERING, in the alternative, Avondale avers that the alleged injury complained of by plaintiff herein, if any, was caused by the sole and/or concurrent negligence of Raymond V. Burkart, Jr. in failing to properly care for his own protection and safety, and/or properly utilize safety equipment, thus barring any recovery here.

### FOURTH DEFENSE

FURTHER ANSWERING, in the alternative, if the alleged injury complained of by plaintiff herein, if any, is found to have been caused by acts or omissions of Avondale and/or any of Avondale's executive officers, including, but not limited to, Henry "Zac" Carter, then the negligence of Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold

Hertz was a contributing cause of the injury, thus either barring or diminishing plaintiff's entitlement to recovery.

## FIFTH DEFENSE

FURTHER ANSWERING, in the alternative, and in the event that Avondale is found liable, which liability is specifically denied, defendants aver that they are entitled to a set off of all amounts recovered under the Louisiana Workers' Compensation Act or the Longshore and Harbor Workers' Compensation Act, if any, against any judgment which may be rendered arising out of this litigation.

## SIXTH DEFENSE

FURTHER ANSWERING, in the alternative, Avondale affirmatively pleads that plaintiff has failed to state a cause of action as plaintiff's sole remedy for the injuries complained of herein, if any, is provided for exclusively in the Louisiana Workers' Compensation Act or the Longshore and Harbor Workers' Compensation Act, which bars all allegations herein.

## SEVENTH DEFENSE

FURTHER ANSWERING, Avondale avers that the alleged injury complained of by plaintiff herein, if any, was caused by acts, omissions, commissions, or conditions which are the responsibility of persons other than Avondale and for whom Avondale has no legal responsibility.

## EIGHTH DEFENSE

FURTHER ANSWERING, plaintiff's injuries and/or damages, if any, were the result of an act of God or unavoidable accident.

## NINTH DEFENSE

FURTHER ANSWERING, the cause of action stated by plaintiff has prescribed or been extinguished in some other manner.

## TENTH DEFENSE

FURTHER ANSWERING, the cause of action is barred by the doctrine of accord and satisfaction.

## ELEVENTH DEFENSE

FURTHER ANSWERING, the cause of action is barred by the doctrine of *Res Judicata.*

## TWELFTH DEFENSE

FURTHER ANSWERING, any settlement with, or release of, any manufacturer, distributor, supplier, or vendor of the asbestos-containing products that gave rise to the injuries alleged in this lawsuit extinguishes any secondary or derivative strict liability that may be alleged in this lawsuit.

## THIRTEENTH DEFENSE

FURTHER ANSWERING, Avondale affirmatively pleads that, in the event plaintiff settles with and/or otherwise releases any solidary obligors without reserving his rights to proceed against the remaining solidary obligors, then the debt to plaintiff is discharged as to any remaining solidary obligors pursuant to La. C. C. art. 2203 in effect at the time of the alleged acts and omissions which form the basis of this lawsuit.

## FOURTEENTH DEFENSE

FURTHER ANSWERING, Avondale affirmatively pleads that in the event plaintiff settles with and/or otherwise releases any person or entities, whether named as defendants or not,

then Avondale is entitled to a credit for the virile share of those settling/released persons or entities.

## FIFTEENTH DEFENSE

FURTHER ANSWERING, Avondale affirmatively pleads that some or all of plaintiff's claims, injuries, or damages are subject to application of comparative fault that must, according to Louisiana law, be assessed as to all at fault persons, including plaintiff.

## JURY DEMAND

Avondale requests a trial by jury on all issues.

## CROSS-CLAIMS AND THIRD PARTY DEMANDS

1.

Plaintiff, Raymond V. Burkart, Jr., filed a Petition seeking damages for injuries allegedly sustained as a result of his alleged asbestos exposure.

2.

Avondale has been named as defendants by the plaintiff in this case.

3.

Avondale denies any and all liability in this case.

4.

Alternatively, while denying any and all liability, Avondale is entitled to virile share contributions from and/or application of comparative fault of the cross-claim and third party defendants for any and all amounts for which they may be cast in judgment and virile share credits or set-offs with respect to all cross-claim and third party defendants who may settle plaintiff's claims.

5.

Named as **Cross-Claim Defendants** (hereinafter sometimes collectively referred to as "Cross-Claim Defendants") are:

A. **Ameron International Corporation**;

B. **Anco Insulations, Inc.**;

C. **Eagle, Inc.** (f/k/a Eagle Asbestos 86 Packing Co., Inc.);

D. **Jacobs Constructors, Inc.** (f/k/a Jacobs/Wiese Constructors, Inc., f/k/a H.E. Wiese, Inc.);

E. **Hopeman Brothers, Inc.**;

F. **Liberty Mutual Insurance Company** (as insurer of Wayne Manufacturing Co., Inc.);

G. **The McCarty Corporation**;

H. **MW Custom Paper, LLC** (as successor-in-interest to the Mead Corporation); and

I. **PPG Industries, Inc.** (f/k/a Pittsburgh Plate Glass Company);

6.

Avondale adopts herein by reference as though set forth *in extenso* all allegations against the Cross-Claim Defendants as asserted in the Petition insofar as they assert the fault, negligence, or strict liability against the cross-claim defendants. Avondale further states that plaintiff's allegations against the cross-claim defendants are equally applicable to the fault, negligence, and strict liability of the third-party defendants. Thus, Avondale adopts those allegations and assert them against the third-party defendants as though they were set forth herein *in extenso* and specifically against the third-party defendants.

7.

Made **Third Party Defendants** herein are:

A.  **International Paper Company** (as successor-in-interest to U.S. Plywood);

B.  **Uniroyal, Inc.;**

C.  **CBS Corp.** (f/k/a Viacom, Inc., successor-by-merger with CBS Corporation f/k/a Westinghouse Electric Corporation);

D.  **Owens-Illinois, Inc.;**

E.  **Bayer CropScience, Inc.** (as successor to Rhone Poulenc AG Company, formerly Amchem Products, Inc., formerly Benjamin Foster Company);

F.  **General Electric Company;**

G.  **Taylor-Seidenbach, Inc.;**

H.  **Ametek, Inc.** (f/k/a Haveg, Champlain Cable Corporation, and Hercules, Inc.)**;**

I.  **Champlain Cable Corporation** (f/k/a Hercules, Inc., as successors to the liability of Haveg Industries, Inc.);

J.  **Hercules, Inc.** (as successor-in-interest to Haveg Industries, Inc., successor-by-merger with Haveg Corporation)**;**

K.  **Crane Co.;**

L.  **Goulds Pumps;**

M.  **Warren-Rupp, Inc.;** and

N.  **Flowserve Corporation** (f/k/a The Duriron Company, Inc.).

8.

Raymond V. Burkart, Jr. alleges that he contracted asbestos-related lung cancer from exposure to asbestos from his, his father's and his uncles' work at Avondale, and various other places of employment.

9.

Cross-Claim Defendants and Third Party Defendants are all miners, manufacturers, sellers, distributors, suppliers, installers and/or users of asbestos products, or were insurers of miners, manufacturers, sellers, distributors, suppliers, installers and/or users of asbestos products, and were engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products and/or were commercial suppliers and/or professional vendors of asbestos or asbestos-containing products, which were expected to and did reach the workplace of Raymond V. Burkart, Jr., his father, and his uncles, where Raymond V. Burkart, Jr. was exposed to them.

10.

The products mined, manufactured, distributed, supplied, sold, and/or used by the Cross-Claim and Third Party Defendants were defective, unreasonably dangerous, and unreasonably dangerous *per se*. Raymond V. Burkart, Jr. was an intended and/or foreseeable user and/or bystander exposed to these products. These defects include, without limitation, the following:

a. the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous or unreasonably dangerous *per se*;

b. the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting potential for causing serious injury and death to those who would be exposed to them;

c. lack of warning or of sufficient warning of the hazards these products would present in the course of their normal, foreseeable use or intended use;

d. lack of safety instruction or of sufficient safety instruction for eliminating or reducing the health risks associated with the intended ultimate use of these products;

e. failure to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.    failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

g.    failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of exposure to these products by intended or foreseeable users, bystanders and others;

h.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.    defects in the composition and construction of these products;

j.    failure to recall these products mined, manufactured, sold, supplied and distributed;

k.    failure to properly package these products so that they could be safely transported, handled, stored, or disposed; and

l.    over-warranting the safety of these products that were manufactured, sold or supplied by the Third Party Defendants.

11.

The negligence, fault and defective products of Cross-Claim and Third Party Defendants are the proximate cause of plaintiff's alleged harm, if any.

12.

Cross-Claim and Third Party Defendants are liable for negligence, fault, strict liability and strict products liability in connection with the manufacturing, distributing, design and/or installation of asbestos-containing products which were defective in design and unreasonably dangerous *per* se, and for failure to warn plaintiff concerning asbestos hazards posed by their products.

### 13.

International Paper Company is the successor to U.S. Plywood. U.S. Plywood was instrumental in the development of Westinghouse's asbestos-containing Fire Retardant Decorative Micarta ("FRDM") and served as its sole distributor from the time it was developed in approximately 1956 until sometime in the early to mid-1970s. Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz were exposed to FRDM which was cut and installed by Hopeman Brothers on vessels at Avondale, and said exposure to FRDM was a substantial contributing cause of plaintiff's injuries, including his alleged asbestos-related disease. International Paper Company is strictly liable as a manufacturer and commercial supplier of FRDM, and was negligent as set forth in the above paragraphs.

### 14.

Products that were manufactured by Uniroyal were used at specific premises where plaintiff claims exposure. Such products contained asbestos to which Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz were exposed, rendering Uniroyal liable for the alleged injures to Raymond V. Burkart, Jr., including his alleged lung cancer, if any.

### 15.

Uniroyal was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be

exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

16.

As a manufacturer of asbestos products, Uniroyal knew or should have known that exposing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart, Harold Hertz, and those similarly situated to asbestos would cause injury to plaintiff and, despite that knowledge, Uniroyal did not provide proper instructions and/or warnings to defendant and others for which Uniroyal is liable pursuant to Louisiana Civil Code article 2315.

17.

CBS Corporation (f/k/a/ Westinghouse) manufactured asbestos-containing Fire Resistant Decorative Micarta to which Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz were exposed, and also developed a patented process by which its Micarta could be laminated to asbestos-containing Marinite panels to create a fireproof wall panel for marine applications. These wall panels were installed in vessels built at Avondale which product was defective in design and unreasonably dangerous per se. Further, CBS Corporation is strictly liable as a commercial vendor and manufacturer and liable for failure to warn Raymond V. Burkart, Jr. concerning asbestos hazards posed by its products.

18.

Owens-Illinois, Inc. was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

19.

Owens-Illinois, Inc. was aware or should have been aware of the dangers presented by exposure to their asbestos products and that Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart, Harold Hertz and others similarly situated could be injured as a result of this type of exposure, but allegedly negligently failed to institute protective measures and to warn defendants and Raymond V. Burkart, Jr of the potential dangers to his health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to plaintiff Raymond V. Burkart, Jr.'s alleged injuries, including his alleged lung cancer.

20.

Bayer CropScience, Inc. (f/k/a Benjamin Foster) was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

21.

Bayer CropScience, Inc. was aware or should have been aware of the dangers presented by exposure to their asbestos products and that Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart, Harold Hertz and others similarly situated could be injured as a result of this type of exposure, but allegedly negligently failed to institute protective measures and to warn defendants and Raymond V. Burkart, Jr of the potential dangers to his health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos,

which exposures caused or contributed to plaintiff Raymond V. Burkart, Jr.'s alleged injuries, including his alleged lung cancer.

22.

General Electric Company was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

23.

General Electric Company was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

24.

Taylor-Seidenbach, Inc. was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

25.

Taylor-Seidenbach, Inc. was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

26.

Ametek, Inc. (f/k/a/ Haveg) was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

27.

Ametek, Inc. was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

28.

Champlain Cable Corporation was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

29.

Champlain Cable Corporation was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

30.

Hercules, Inc. (successor-in-interest to Haveg Industries, Inc.) was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

31.

Hercules, Inc. was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and

others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

32.

Crane Co. was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

33.

Crane Co. was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

34.

Goulds Pumps was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or

facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

35.

Goulds Pumps was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

36.

Warren-Rupp, Inc. was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

37.

Warren-Rupp, Inc. was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart

and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

38.

Flowserve Corporation (f/k/a The Duriron Company, Inc.) was a manufacturer, seller, distributor, supplier and/or user of asbestos products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos containing products.

39.

Flowserve Corporation was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Raymond V. Burkart, Jr., his family members and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Avondale and Raymond V. Burkart, Jr. of the potential dangers to Raymond V. Burkart, Jr.'s health from exposure to asbestos and was negligent in allowing Raymond V. Burkart, Jr., Raymond V. Burkart, Sr., Bernard Burkart and/or Harold Hertz to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Raymond V. Burkart, Jr. alleged injuries, including his alleged lung cancer, if any.

WHEREFORE, Avondale prays that its Answer, Affirmative Defenses, Cross-Claims and Third Party Demands be filed, and that Cross-Claim and Third-Party Defendants be duly served and cited, and that after due proceedings are had that there be judgment in favor of Avondale and against plaintiff dismissing plaintiff's claims, with prejudice and at plaintiff's costs, and in the alternative, should Avondale be found liable to plaintiff, which is denied, that there be further judgment over and against Cross-Claim and Third-Party Defendants for virile share contributions from all Cross-Claim and all Third-Party Defendants for any and all amounts owed to plaintiff, and for virile share credits or offsets with respect to all entities with whom plaintiff has or may settle, for all costs of these

proceedings, and for all other equitable and legal relief as the nature of the case may permit and as the law may allow.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

*/S/ David M. Melancon*
GUS A. FRITCHIE III (#5751)
TIMOTHY F. DANIELS (#16878)
DAVID M. MELANCON (#23216)
EDWARD W. TRAPOLIN (#27667)
ALISON A. SPINDLER (#34103)
ALEX T. ROBERTSON (#37285)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile:  (504) 310-2101
gfritchie@irwinllc.com
tdaniels@irwinllc.com
dmelancon@irwinllc.com
etrapolin@irwnllc.com
arobertson@irwinllc.com
aspindler@irwinllc.com
**Counsel for Huntington Ingalls Incorporated**

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any and all non-CM/ECF participants.

*/S/ David M. Melancon*